IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

```
TAMARA MCWILLIAMS; HENRY            )
SHAMBRY, JR.; D. GRANT WALTER;      )   Civil No. 02-1426-JE
and STEVEN ARMONY; individually     )
and on behalf of other              )   FINDINGS AND
persons similarly situated,         )   RECOMMENDATION
                                    )
              Plaintiffs,           )
                                    )
         v.                         )
                                    )
PORTLAND PUBLIC SCHOOL DISTRICT     )
NO. 1J; MULTNOMAH COUNTY, OREGON;   )
PORTLAND BOARD OF EDUCATION;        )
MARC ABRAMS; LOLENZO POE; SUE       )
HAGMEIER; DERRY A. JACKSON, SR.;    )
DEBBIE GOLDBERG MENASHE; JULIA      )
BRIM-EDWARDS; KARLA WENZEL; and     )
JAMES SCHERZINGER,                  )
                                    )
              Defendants.           )
_____)
```

    Mark E. Griffin
    Griffin & McCandlish
    215 S.W. Washington Street, Suite 202
    Portland, OR 97204

FINDINGS AND RECOMMENDATION - 1

William D. Brandt
1820 Commercial Street, S.W.
Salem, OR 97302

    Attorneys for Plaintiff

Jeffrey D. Austin
J. Michael Porter
Miller Nash LLP
111 S.W. Fifth Avenue, Suite 3400
Portland, OR 97204

    Attorneys for Defendant

JELDERKS, Magistrate Judge:

    Plaintiffs Tamara McWilliams, Henry Shambry, D. Grant Walter, and Steven Armony bring this class action alleging that they were unlawfully terminated from their positions as custodial employees of Portland Public School District No. IJ (the District).  Defendants include the District; Multnomah County; James Scherzinger, Acting Superintendent of the District at times relevant to this action; and individual Portland Board of Education members at times relevant to this action.  These individual Board members include Marc Abrams, Lorenzo Poe, Sue Hagmeier, Derry A. Jackson, Sr., Debbie Goldberg Menashe, Julia Brim-Edwards, and Karla Wenzel.  The individual defendants move for summary judgment on the grounds that they are entitled to absolute immunity.  The motion should be granted.

FINDINGS AND RECOMMENDATION - 2

**FACTUAL BACKGROUND**

Plaintiffs and the class they seek to represent in this action were custodians or assistant custodians employed by the District who were terminated in 2002. Some of the plaintiffs have been reinstated, and others are awaiting reinstatement.

At the time of their termination, plaintiffs were members of Service Employees International Union Local 140 (Local 140), a public-sector labor union that is the exclusive bargaining representative for the custodians with the District. Some of the plaintiffs are no longer members of Local 140.

The District is an Oregon public school district whose population exceeds 300,000.

Defendant Scherzinger sent plaintiff Walter, president of Local 140, a letter dated February 5, 2002, informing Walter that the District proposed to contract out to private providers those custodial services that were then performed by members of the Local 140 bargaining unit. The District offered to bargain with Local 140 over the District's proposal to contract out the provision of custodial services, and the District and Local 140 engaged in bargaining concerning that issue.[1]

---

[1] The Oregon Employment Relations Board has rejected a charge brought by Local 140 asserting that the District had not bargained in good faith.

FINDINGS AND RECOMMENDATION - 3

In mid-March, 2002, the school board approved a budget for the 2002-2003 school year which reduced expenditures from the 2001-2002 budget by approximately $36 million. This reduced budget was based in part on the possibility that the District could contract out all custodial services to a private provider, and stop employing the custodians who were represented by Local 140.

In April, 2002, the District issued a request for proposals to perform custodial services from rehabilitation facilities. On July 8, 2002, the school board passed a resolution authorizing execution of a contract to purchase custodial services from Portland Habilitation Center. The custodians represented by Local 140 were subsequently replaced. Defendants characterized their loss of employment as a lay off that took place "pursuant to the process in the collective bargaining agreement between the District and Local 140." Plaintiffs assert that they were terminated in violation of Oregon law.

The custodians were terminated in two groups. At the request of custodians in the first group, the Custodians Civil Service Board (CCSB) conducted an investigation, determined that the custodians were terminated, and not removed pursuant to a "lay-off" or "reduction in force," determined that the terminations were unlawful, and ordered that the custodians be reinstated. When the second group of terminated custodians

FINDINGS AND RECOMMENDATION - 4

demanded a hearing before the CCSB, the District, acting through the school board members who are individual defendants in this action, authorized the filing of a lawsuit seeking to enjoin the CCSB's investigation.  Multnomah County Circuit Court Judge Janice Wilson ruled in favor of the District, and entered a judgment that annulled the CCSB's reinstatement order.  As a consequence of that lawsuit, the second group of custodians were unable to obtain a hearing before the CCSB.

On April 27, 2006, the Oregon Supreme Court issued an opinion holding that the District was required to observe the merit system set out in the Custodians' Civil Service Law. <u>Walter v. Scherzinger</u>, 339 Or. 408, 426, 121 P.3d 644 (2005). The Court held that the Custodians' Civil Service Law, which created the CCSB, requires the District to employ custodians such as plaintiffs, who are represented by Local 140.

### PLAINTIFF'S CLAIMS AGAINST INDIVIDUAL DEFENDANTS

In the present action, plaintiffs allege that the defendants, including the moving individual defendants, without due process, deprived them of property interests created by Oregon law and protected by the United States Constitution.  Plaintiffs allege that the actions of the defendants, including the individual defendants, "constitute an official policy and a deliberate choice to follow a course of action, i.e., to contract out custodial services in the

FINDINGS AND RECOMMENDATION - 5

Portland School District and to terminate the employment of plaintiffs and the members of the class." They further allege that defendants violated their constitutionally-protected rights by:

   1. Discharging plaintiffs in violation of the Custodians Civil Service Law;

   2. Dismissing plaintiffs as custodians without cause in violation of ORS 242.620;

   3. Dismissing plaintiffs as custodians without serving a written statement of the cause of dismissal in violation of ORS 242.620;

   4. Refusing to reinstate plaintiffs to employment pursuant to a lawful order of the CCSB or without according plaintiffs a due process hearing before terminating their employment; and

   5. Failing and refusing to reinstate plaintiffs to employment and instead continuing to employ an illegal contracted-out work force.

FINDINGS AND RECOMMENDATION - 6

Plaintiffs seek an Order requiring the District to reinstate them to the civil service positions from which they were dismissed, and a declaration that they are entitled to reinstatement to their civil service positions as custodians without loss of pay, medical insurance, retirement, or other benefits.  Plaintiffs also seek to recover economic damages incurred as a result of their loss of employment.

### STANDARDS FOR EVALUATING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving party must show the absence of an issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case.  Id.  When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial.  Id. at 324.

The substantive law governing a claim or defense determines whether a fact is material.  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party.

FINDINGS AND RECOMMENDATION - 7

Id. at 630-31.  The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985).  No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### DISCUSSION

Defendants assert that the record establishes that the school board approved a budget that assumed that plaintiffs would be laid off, approved a contract with a custodial provider, and approved a resolution authorizing execution of a custodial services contract.  They contend that the individual defendants are entitled to summary judgment because these acts "are legislative in nature," and that these defendants are "absolutely immune from suit under 42 U.S.C. § 1983 (Section 1983)."  Defendants' memorandum in support of motion for summary judgment at 3.

Plaintiffs contend that the actions taken by the individual defendants "were not legislative in nature." Plaintiff's memorandum in opposition to defendants' motion for summary judgment at 8.  They contend that material issues of fact exist as to:

FINDINGS AND RECOMMENDATION - 8

1. Whether plaintiffs were dismissed from their employment in violation of the Custodians Civil Service Law;

2. Whether defendants' assertion that plaintiffs were "laid off" accurately describes the circumstances of the termination of plaintiffs' employment;

3. Whether defendants dismissed plaintiffs as custodians without cause;

4. Whether defendants dismissed plaintiffs without affording them a due process hearing or while refusing to comply with a lawful order of the CCSB; and

5. Whether defendants' actions described above constituted the policies of the District and the school board, and whether the District and the school board have adopted the above-described course of conduct through authorized decision makers.

Plaintiffs also contend that defendants' motion for summary judgment as to the individual defendants is premature because discovery is not complete, and that additional discovery is needed to determine the validity of defendants'

FINDINGS AND RECOMMENDATION - 9

assertion that they were replaced in order to save the District millions of dollars.  Plaintiffs assert that defendants may instead have been acting to break the union.

Plaintiff's arguments fail.  In analyzing the pending motion for summary judgment, the critical issue is not whether defendants violated state law, dismissed plaintiffs without due process, or were motivated by any goals other than reducing the budget.  Instead, the question is whether the individual defendants' conduct of which plaintiffs complain should be characterized as a "legislative act" to which absolute immunity attaches.

The clearest guidance for resolving this question is found in Bogan v. Scott-Harris, 523 U.S. 44 (1998).  There, a mayor and city council members had eliminated the positions of 135 municipal employees, including the plaintiff, after the state had reduced its financial aid.  The Court noted that local legislators are entitled to "absolute legislative immunity" from liability pursuant to Section 1983 as to "all actions taken 'in the sphere of legitimate legislative activity.'"  Id. at 54 (citing Tenney v. Brandhove, 341 U.S. 367, 372 (1951)).  The Court observed that determination of whether an act is "legislative turns on the nature of the act, rather than on the motive or intent of the official performing it."  Id.  Analyzing the defendants' conduct in the action before it, the Court held that the acts of the mayor and city

FINDINGS AND RECOMMENDATION - 10

council members were "legislative," and that the defendants were accordingly entitled to absolute immunity from suit pursuant to Section 1983.  Id. at 55.  The Court noted that the actions of a city council member who had voted for an ordinance eliminating certain positions "were, in form, quintessentially legislative."  Id.  Noting that it had earlier "recognized that officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions," the Court also concluded that actions of the mayor, who had introduced the budget and signed into law the ordinance eliminating the positions, "also were legislative, even though he was an executive official."

Two other decisions which defendants cite, Strasburger v. Board of Education, Hardin County, 143 F.3d 351, 354 (7th Cir. 1998), and Lumpkin v. City of Lafayette, 24 F. Supp. 2d 1259, 1262-63 (MD Ala. 1998), also support the conclusion that the individual defendants here are entitled to absolute legislative immunity.  In Strasburger, a teacher brought an action against the school board that had eliminated his position through a reduction in force.  Citing Bogan, the court observed that the school board members "appear to have an absolute immunity defense for their legislative actions. . . ."[2]  Strasburger, 143 F.3d at 355, n. 1.

---

[2] The court concluded, however, that the defendants had waived the defense.

FINDINGS AND RECOMMENDATION - 11

In <u>Lumpkin</u>, a former city employee brought an action against the city, the mayor, and city council members after his position was eliminated when the ordinance creating his position was abolished. Based upon its analysis of <u>Bogan</u>, the court concluded that the mayor and city council members were entitled to absolute immunity because "[v]oting to abolish an ordinance and voting to abolish an official city position are legislative acts." <u>Lumpkin</u>, 24 F. Supp 2d at 1263. The court noted that, as in <u>Bogan</u>, the defendants' motivation was irrelevant, and that the decision to eliminate the position in question "'may have prospective implications that reach well beyond the particular occupant of the office.'" <u>Id.</u> (quoting <u>Bogan</u>, 523 U.S. at 56).

In an effort to demonstrate that the acts at issue were not "legislative" in nature, plaintiffs assert that they are <u>not</u> complaining about the individual defendants' adoption of a budget, which they concede was a "legislative act." They argue, however, that the <u>implementation</u> of the budget, which implicated "the subsequent decisions to discharge plaintiffs, replace them with an illegal workforce, refuse to reinstate them, and refuse to follow the lawful order of the CCBS," were <u>not</u> legislative acts, but instead were administrative acts to which absolute "legislative immunity" did not attach. Plaintiffs characterize these acts as "ad hoc, ministerial acts, aimed at specific individuals: these plaintiffs and

FINDINGS AND RECOMMENDATION - 12

other classified civil service custodians."  They contend that these decisions "were particularized employment decisions, rather than general policy making."

Based upon my review of the record before the court and my examination of relevant decisions cited by the parties, I conclude that the pending motion for summary judgment can be resolved without additional discovery, and that the individual defendants here are entitled to absolute legislative immunity from this Section 1983 action.  The actions of the individual defendants who were members of the school board when the decision to eliminate the civil service custodial positions was made were, like those of the defendant city councilor in Bogan, "quintessentially legislative."  Though plaintiffs assert that they are complaining only of the individual defendants' conduct <u>after</u> the budget was adopted, the elimination of civil service custodial positions was inextricably linked to the passage of the budget, which was based upon a transition to contracted custodial services.  The passage of the budget and the subsequent steps implementing the budget and discontinuing the use of the plaintiffs' services can only be fairly characterized as actions taken "in the sphere of legitimate legislative activity" within the meaning of Bogan.  Though the Oregon Supreme Court ultimately concluded that the School Board erred in doing so, the decision to transition to the use of contracted custodial

FINDINGS AND RECOMMENDATION - 13

services is the kind of discretionary policy decision to which legislative immunity attaches.

The conduct of defendant Scherzinger, taken in his capacity as Acting Superintendent of the District, arguably presents a closer question. However, under the guidance of <u>Bogan</u>, I conclude that defendant Scherzinger, like the individual Board members, is entitled to legislative immunity from plaintiffs' Section 1983 action. The <u>Bogan</u> Court concluded that a mayor's introduction of a budget that was based upon elimination of certain positions and signing of an ordinance that eliminated the positions were acts of a "legislative" nature "because they were integral steps in the legislative process." <u>Bogan</u>, 523 U.S. at 56. Here, Scherzinger's actions as Acting Superintendent of the District were likewise "integral steps" in a legislative process that necessarily "reflected a discretionary, policymaking decision implicating the budgetary priorities" of the District.

## CONCLUSION

Defendants' motion for summary judgment as to the individual defendants (# 56) should be GRANTED.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if

FINDINGS AND RECOMMENDATION - 14

any, are due February 6, 2007.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objection. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

DATED this 22nd day of January, 2007.

/s/   John Jelderks
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 15